On review of the corrected reapportionment plan submitted November 18, by the Secretary of State pursuant to Oregon Constitution, Article IV, section 6(3)(e), corrected reapportionment plan approved December 12, 1991

David LINDER
and Elisabeth Linder,
*Petitioners,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38476)

Vicki Ervin PAULK,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38478)
(Consolidated)

821 P2d 1089

PETERSON, J.

## PETERSON, J.

On October 15, 1991, this court issued an opinion on the five petitions that had been filed challenging the reapportionment plan drafted by the Secretary of State (Secretary). *Ater v. Keisling*, 312 Or 207, 819 P2d 296 (1991). We upheld the reapportionment plan against the claims made in three of the petitions, and those petitions were dismissed.[1] With regard to the other two, *Paulk v. Keisling* and *Linder v. Keisling*, we granted the petitions, voided the plan, and returned it to the Secretary to "correct the reapportionment in the particulars discussed [t]herein, and in no others, and [to] file the corrected reapportionment with the court on or before December 1, 1991." 312 Or at 223.

The Secretary filed a corrected reapportionment with the court on November 18, 1991. Article IV, section 6(3)(e), of the Oregon Constitution, provides:

"On or before December 15, the Supreme Court shall review the corrected reapportionment to assure its compliance with subsection (1) of this section and all law applicable thereto and may further correct the reapportionment if the court considers correction to be necessary."

With regard to the errors alleged in the *Paulk* petition, the Secretary has reassigned the eight Clackamas County census blocks that had been incorrectly assigned to Multnomah County House Districts and has reassigned all "floating blocks" to the districts within which they are physically located. Further, with regard to the census block that was believed to straddle the Multnomah-Clackamas County line — the assignment of which the court directed the Secretary to reconsider — further investigation by the Secretary of State, in consultation with the county clerks of both counties, revealed that the block is wholly contained within Multnomah County and thus was properly assigned in the reapportionment plan of August 14, 1991.

With regard to the *Linder* petition, the Secretary enlisted the aid of the United States Census Bureau, which bisected the census block in which the Linders reside so as not to include persons on both sides of Forest Park within a single

---

[1] The petitions dismissed were *Ater v. Keisling* (S38475), *Bugas v. Keisling* (S38477), and *Caballero v. Keisling* (S38479)..

census block. The Secretary assigned the new census block containing the Linders and their neighbors (Census Tract 70 Block 201A-1) to House District 12. The citizens residing in Census Tract 70 Block 201A-2 have been assigned to House District 7, as they were in the plan of August 14, 1991, prior to the division of their census block. Thus, the Secretary has corrected the plan in the particulars discussed in the court's October 15 opinion.

The Secretary has corrected all of the challenged assignments brought to our (and his) attention in the *Paulk* and *Linder* petitions. The corrected reapportionment plan complies with Article IV, section 6(1), of the Oregon Constitution. Therefore, the corrected reapportionment plan is approved and shall become operative on December 15, 1991. Or Const, Art IV, § 6(3)(f).

**FADELEY, J.,** concurring in part and dissenting in part.

I concur in the court's approval of the Secretary's changes in the reapportionment plan, as directed by the court. I dissent, however, from the majority's continuing conclusion that the remainder of the plan is unexceptionable.

When the court previously declared the initial plan in violation of law and sent it back to the Secretary of State, the state constitution mandated that "the reapportionment shall be void." Or Const, Art IV, § 6(3)(d). Although the Secretary no longer had power to correct particulars of the plan not specified in the court's initial opinion in this matter, *id.*, the state constitution mandates that, after the Secretary makes the corrections initially specified by this court, the plan must once again be returned to this court to assure compliance with "all law applicable thereto." Or Const, Art IV, § 6(3)(e). The plan is before us again for review under that provision. To achieve compliance with all applicable law, when the plan has been returned to us, the court is expressly empowered to make "further" corrections. Or Const, Art IV, § 6(3)(e). I dissent from the majority's failure to make further corrections necessary to assure compliance of the plan with all applicable law.

The continuing vice in the Secretary's plan now before us the second time around, and in the majority's

continuing approval of it, lies in the exaltation of one of five statutory factors over the remaining four factors. There is no warrant in the statute to prefer one factor to such an extent as to violate by totally ignoring several of the other factors. Yet, that is what the plan, and the majority's approval of it, does. Moreover, there is no warrant in statute or decided cases to interpret so narrowly the statutory factor that is exalted over the other factors.

The statute, ORS 188.010(1), provides:

"The Legislative Assembly or the Secretary of State, whichever is applicable, shall consider the following criteria when apportioning the state into congressional and legislative districts:

"(1)  Each district, as nearly as practicable, shall:

"(a)  Be contiguous;

"(b)  Be of equal population;

"(c)  Utilize existing geographic or political boundaries;

"(d)  Not divide communities of common interest; and

"(e)  Be connected by transportation links."

The plan approved by the majority makes it theoretically possible for a resident of Multnomah County to represent Baker and Grant County voters, among others, in the Oregon Senate. I would hold that that possibility violates ORS 188.010(1) — specifically paragraphs (c), (d) and, in degree, (e) — as well as violating the express words of Article IV, section 7, of the Oregon Constitution that prohibit dividing a county when creating a multi-county senatorial district. That violation occurs twice in the seven-county district that the majority approves without any reference to the constitutional provision on point or to the remaining factors in ORS 188.010(1).

There is no necessity to violate or abridge ORS 188.010(1)(c), (d), and (e), nor Article IV, section 7, in order to keep district population deviations within a constitutionally acceptable range. My dissent, when this reapportionment plan was initially before us, in *Ater v. Keisling*, 312 Or 207, 819 P2d 296 (1991), makes that mathematically and legally clear. Absent such a necessity, I would uphold the statutory

factors and the constitutional provision cited, not discard them *sub silentio*.

I would correct the plan to retain all of Multnomah County in senate districts composed only of voters within that county. Further, I would not split Wasco County in three parts and two different senate districts and would not include part of Multnomah County and all of Baker County in the same senate district, nor would I place part of Wasco County in the same house district with Baker County. Only by making those further corrections, as the court is empowered now to do by Article IV, section 6(3)(e), of the Oregon Constitution, will this court uphold the law applicable to reapportionment. Under that section and subsection, the court is required to review the "corrected reapportionment to assure compliance with * * * all law applicable thereto," and the court "may *further* correct the reapportionment if the court considers correction to be necessary." Or Const, Art IV, § 6(3)(e) (emphasis added). By those provisions, the voters thus wisely provided this court with one last chance to enforce ORS 188.010(1) in all respects in order to serve the theory of the direct representational form, also selected by the people, for the composition of the legislative assembly.[1]

The reapportionment plan, even as corrected, does not comply with applicable law. I dissent from approval of it.

---

[1] *See, e.g.*, Or Const, Art IV, § 1(1) (vesting the legislative power, other than that reserved to the people, in a "Legislative Assembly"); Art IV, § 3 (requiring individual legislators to be selected by respective districts established by law); Art IV, § 8 (requiring residency within the district for one year preceding election as a qualification for legislative office); Art III, § 1 (dividing state government into three separate departments or branches and mandating that the functions of each generally be kept separate from that of the others).

The intrusion upon a directly representative legislative assembly that I would correct may perhaps best be illustrated by asking the following question: How directly represented would residents of Multnomah County consider themselves to be if their state senator resided in Baker City, and vice versa? There is already enough voter alienation from government, with its attendant ills, without adding the further estrangement of representation by a legislator not sharing a community of interest with the voter, not easily accessible by road, and not related to the same or similar geographic or local political environment as that of the voter who is to be represented.

Compliance with law would require the presence of those aspects of commonality because ORS 188.010(1) requires them. But the majority's approval of the deficient "corrected" plan does not do so.